# Hall *v.* Steele.

*Mandamus to Probate Judge, on refusal to grant License for Retailing Spirituous Liquors.*

1. *Alteration or amendment of bills, under constitutional provision.*—A bill which, as originally introduced, prohibited the sale of spirituous liquors in a single county or locality, may, by amendment or substitute, be made to include several other places in different counties, without violating the constitutional provision (Art. iv, § 19) which declares that no bill "shall be so altered or amended, on its passage through either house, as to change its original purpose."

2. *Notice of local laws, under constitutional provision.*—While a constitutional provision requires that notice of the intention to apply for the passage of a local law shall be given twenty days before the introduction of the bill, and that proof of such notice shall be exhibited to the General Assembly (Art. iv, § 24), it is not required that the legislative journals shall affirmatively show these facts; and in the absence of any recital in the journals, the courts will presume a compliance with the constitutional mandate.

3. *Prohibitory law approved Feb. 28th, 1887, as to sale of liquors; constitutionality of.*—The act approved February 28th, 1887, entitled "An act to prohibit the sale, giving away, or disposing of any spirituous, vinous or malt liquors, or intoxicating bitters, beverages or drinks," etc., in the county of Montgomery (with certain exceptions) and fifty other designated localities (Sess. Acts 18868-7, p. 665), which, as originally introduced, applied only to Montgomery county, is not unconstitutional because of the addition of the other places by amendment; nor because the legislative journals do not affirmatively show that notice was given and proved, as to each of the localities so added, of the intention to apply for such prohibitory law; nor is there any defect in the legislative journals as to the action of either house on the report of the committee of conference.

4. *Mandamus; not awarded when nugatory.*—On application for a license to retail spirituous liquors, made after the passage of a prohibitory law, but before it became operative; which being refused, on account of the passage of that law, a petition for *mandamus* was at once

[Hall v. Steele,]

filed, and dismissed; although the applicant may have been entitled to a license at the time, and also to a *mandamus* when first prayed for, this court will not now award the writ.

APPEAL from the Circuit Court of Colbert.

Tried before the Hon. H. C. SPEAKE.

On the 23d March, 1887, the appellant in this case made application by petition to Hon. JOHN A. STEELE, the judge of probate of said county, for a license to retail spirituous liquors in the town of Leighton; tendering the money prescribed as the price, and producing the recommendation of the requisite number of householders and freeholders. On the next day, March 24th, the probate judge refused to grant a license as prayed, and dismissed the petition, basing his refusal on "the recent act of the General Assembly prohibiting the sale of vinous or spirituous liquors in the town of Leighton." The applicant at once filed his petition, addressed to Hon. H. C. SPEAKE, the presiding judge of the circuit, asking a *mandamus* to compel the judge of probate to grant a license as prayed. Notice of the petition was acknowledged on the same day, and a rule *nisi* waived. On the next day, March 25th, Judge Speake rendered judgment in the case, refusing to grant a *mandamus*, and dismissing the petition at the costs of the petitioner. A bill of exception was duly reserved to this ruling, and the judgment is now assigned as error.

As to the legislative proceedings connected with the introduction and passage of this bill, the Senate Journal shows that, on the 1st February, 1887, a bill was introduced by Mr. Graham, of Montgomery, "to prohibit the sale or giving away of spirituous, vinous or malt liquors, and other intoxicating beverages, in the county of Montgomery, outside of the corporate limits and police jurisdiction of the city of Montgomery," and was referred to the Committe on Temperance (pp. 329-30); that the committee reported favorably on the bill, on February 3d, when it was read a second time, and ordered to a third reading (pp. 356-7); and that it was read a third time, and passed, on February 7th (p. 393). The House Journal shows that the bill was received from the Senate, on February 9th, and referred to the Committee on Temperance (pp. 657-8); that on Feb. 16th, "Mr. Larkin, from special committee, reported favorably, by way of substitute," to the bill, "numerous amendments were offered and adopted, the substitute as amended was adopted, and the bill was ordered to be engrossed for a third reading to-morrow" (p. 774); and that on the next day, the bill was read a third time and passed (p. 803). The Senate Journal shows that, on the return of the bill, numer-

ous amendments to the House substitute were adopted, and the substitute as amended was concurred in (pp. 598-600). The House refused to concur in these amendments, and asked a committee of conference; and a committee of conference was appointed, as shown by House Journal, p. 934; Senate Journal, p. 649. The report of the committee was made to the House on Feb. 24th, and was concurred in, "yeas 72, nays 1," as shown by the House Journal, 1010-11; and the Senate concurred in it on the next day, "yeas 22, nays 0," as shown by the Senate Journal, p. 700.

S. F. RICE, J. B. MOORE, and JAMES JACKSON, for appellant. The act here involved was originally introduced as a local measure applicable only to one county; and it was changed by successive amendments, of which the legislative journals contain no record, until it became, as it is styled in the journals, an "Omnibus Prohibition Bill." This was an entire change in the whole character and purpose of the bill, in violation of the constitutional inhibition; and these new localities were added without any notice to the citizens whose rights were involved, or opportunity to them to be heard, in equal violation of the provision requiring notice to be given of local bills. And if the measure is valid as a law, it certainly was not of force when the petitioner in this case applied for a license.—Code, §§ 4448; *Tally v. Grider,* 66 Ala. 119; *Grider v. Tally,* 77 Ala. 442.

CLOPTON, J.—The judge of probate based his refusal to issue to the appellant a license to sell vinous or spirituous liquors in the town of Leighton, on an act passed during the last session of the General Assembly, "to prohibit the sale, giving away, or disposing of any spirituous, vinous, or malt liquors, or intoxicating bitters, beverages or drinks, or fruits preserved in alcohol or alcoholic liquors," in a number of enumerated localities in different parts of the State, the town of Leighton being one of them. The act was originally introduced as a bill "to prohibit the sale or giving away of spirituous, vinous, or malt liquors, and other intoxicating beverages, in the county of Montgomery, outside of the corporate limits and police jurisdiction of the city of Montgomery;" and in this form was passed by the Senate. In the House of Representatives, a substitute was adopted by way of amendment, extending the provisions of the bill to numerous other localities; and the title was correspondingly changed, and the act was eventually passed as published in Pamphlet Acts 1886-87, p. 665.

[Hall v. Steele.]

It is insisted, that the act is violative of section 19 of Article IV of the constitution, for the reason, that the bill was so altered or amended on its passage as to change its original purpose.

This clause of the constitution we fully considered and construed in *Stein v. Leeper*, 78 Ala. 517, when the constitutionality of a statute having the same purpose, and in this respect substantially a similar legislative history, was under consideration. We held, that the original purpose of the bill, being *local* prohibition, was not altered or changed by increasing by amendment the localities in which the act should have operation; that such were extensions, and not changes of the purpose. We find no reason to depart from the construction then placed on the clause of the constitution referred to.

It is further insisted, that the act was not passed in accordance with the constitutional requirements, and is therefore invalid. This contention is founded on two grounds : that the manner in which the bill was amended and passed repels the presumption, that the notice of the intention to apply for the passage of a local or special law was given in compliance with the constitutional provision ; and on the supposed omission of the journal to show that the report of the committee of conference, to whom the bill and amendments were referred, was adopted. by the Senate in the manner provided by section 22, of Article IV of the constitution. We have uniformly held, that when the constitution does not require the journals to affirmatively show that a particular thing, necessary to the validity of the legislative action, was done, mere silence will not invalidate, and in such case we will presume that the legislators observed their obligation, and did not pass such bill without sufficient proof that the proper notice had been given. The unconstitutionality of an act enrolled, authenticated by the signatures of the presiding officers, and approved and signed by the Governor, must be affirmatively and clearly shown, before the courts are authorized to treat it as void, because not having been passed in accordance with the rules of parliamentary law prescribed in the constitution.— *Walker v. Griffith*, 60 Ala. 361; *Clark v. Jack*, 60 Ala. 271. It is consistent with all the proceedings shown by the journal, that notice had been previously given in respect to each of the included localities.—*Harrison v. Gordy*, 57 Ala. 49.

As to the other ground of objection, counsel are mistaken in their supposition. The journals show, that the report of the committee of conference was concurred in by each House, by a vote of a majority thereof taken by yeas and

nays.—House Journal, 1886-87, p. 1010; Senate Journal, 1886-87, p. 700.

Under section 4448 of the Code of 1876, the act did not go into effect until thirty days after the adjournment of the legislature, which occurred February 28, 1887. The application for the license was made about a week before the expiration of the thirty days. On this ground, it is contended, that the refusal of the judge of probate to grant the license under the general law is without lawful excuse. We shall not now consider, whether it was the duty of the probate judge, at the time the application was made, to issue a license to sell vinous or spirituous liquors covering the balance of the year, with knowledge of the passage of a law, which would go into effect within a few days thereafter, prohibiting the sale of such liquors. If it were conceded that the petitioner was entitled to a license when he made application, and to relief when these proceedings were instituted, the act is now in force, and the time has expired when the petitioner had a clear legal right to a license. The consequence is, a writ of *mandamus* will not be awarded, to compel the judge of probate to authorize the petitioner to commit, what is now a criminal offense. *Comer v. Bankhead*, 70 Ala. 136; *Ex parte Shaudies*, 66 Ala. 134.

Affirmed.