[Jennings v. Russell.]

# Jennings *v.* Russell.

*Mandamus to Probate Judge, on refusal of License to Retail Spirituous Liquors.*

1. *Notice of local or special law; under constitutional provisions.*—The validity of a local or special law can not be assailed, on the ground that due notice of it was not given, as required by constitutional provision (Art. IV, § 24); the presumption being indisputable, that proof of notice was adduced before the General Assembly, although the fact is not shown by the legislative journals.

2. *Area covered by local prohibitory law.*—A local law, prohibiting the sale of spirituous liquors "within three miles of" a named town, includes the corporate limits of the town.

APPEAL from the City Court of Decatur.

Tried before the Hon. WM. H. SIMPSON.

On February 20th, 1891, Thomas F. Jennings, the appellant, presented to the appellee, E. M. Russell, as Probate Judge of Morgan County, an application for a license to sell spirituous, vinous and malt liquors, within the corporate limits of the town of Falkville in said county; and this application was accompanied by the indorsement of the requisite number of house-holders and free-holders in said town, as required by law. Petitioner also tendered to the Probate Judge the full amount of the State and County taxes for the issuance of said license, and promised to comply with all the requirements of the law in reference to granting the same. The Probate Judge refused to issue the license. Thereupon the said Jennings filed his petition to the Judge of the City Court of Decatur, stating therein the above facts, and asking for a writ of *mandamus* to the said Russell, as Probate Judge, commanding him to issue the license prayed for. In response to the order to show cause why the writ of *mandamus* prayed for should not be issued, the said E. M. Russell demurred to the petition, on the ground that by an act of the General Assembly, approved December 12th, 1888, the selling, giving away or otherwise disposing of spirituous, vinous or malt liquors, within three miles of Falkville was prohibited; and that therefore it was unlawful to issue the license. Upon the filing of this demurrer, the petitioner amended his petition, alleging the fact that, under the act referred to, the selling, giving away or otherwise disposing of spirituous, vinous or

[Jennings v. Russell.]

malt liquors was prohibited within a radius of three miles from the said limits of the town of Falkville, but did not apply to selling, giving away or otherwise disposing of liquors within the corporate limits of the town of Falkville; and further, that the notice as required by section 24, Art. IV of the Constitution of the State was not complied with, and the act was, therefore, unconstitutional.  The respondent demurred to the amended petition, on the grounds that the act had reference to both the town and to the radius of three miles from the center of said town; and that as the journals of the General Assembly of 1888-9 did not affirmatively show that no evidence of the publication of notice of the intention to apply for the passage of said act, was presented to the General Assembly, the law conclusively presumes that the constitutional requirements were complied with.  Upon the submission of the cause upon the demurrers, the court held that they were well taken, sustained them, and dismissed the petition. This appeal is prosecuted from the order of the court sustaining the demurrers and dismissing the said petition.

S. P. RATHER, and MORRIS A. TYNG, for appellant.

No counsel marked for appellee.

WALKER, J.—The petition as amended alleges that the journals of the Senate and of the House of Representatives for the session of 1888-9 are entirely silent as to the giving or not giving of the notice required by section 24 Article IV of the Constitution in reference to the local or special law approved December 12, 1888, entitled "An act to prohibit the sale, giving away, or otherwise disposing of spirituous, vinous or malt liquors within three miles of Falkville, Morgan County, Alabama."—Acts of Ala. 1888-9, p. 184 ; and that said journals are also silent upon the question of the exhibition to the General Assembly of the evidence that such notice had been given.   But the petition avers that the requirement as to giving such notice and exhibiting the evidence thereof was not complied with, and this averment is made the basis of the assault upon the constitutionality of the act in question.   The grounds of demurrer addressed to this branch of the petition raise the inquiry as to the competency of the court to try the issue of fact sought to be presented.   Several times it has been determined by this court that when the legislative journals are silent on the subject it will be presumed, in favor of the validity of a local law, that the required notice was given and proof thereof duly made.—*Harrison v. Gordy*, 57 Ala. 49;

*Walker v. Griffith*, 60 Ala. 361; *Clarke v. Jack, Ib.* 271; *McKemie v. Gorman*, 68 Ala. 442; *Hall v. Steele*, 82 Ala. 562. In *McKemie v. Gorman, supra*, it was said: "If it is admitted, that notice of the intention to apply to the General Assembly for the enactment of this statute ought to have been given, in obedience to the 24th section of the 4th article of the Constitution, notice is conclusively presumed, unless the absence of it is affirmatively shown by the journals of the General Assembly. It is not a disputable fact, in reference to which evidence may be received to invalidate the enactment, whenever rights are asserted under it, leaving the enactment to be declared valid in one case, when there is a want of evidence countervailing the presumption, and invalid in another when such evidence is introduced. Laws do not rest in such uncertainty, or on such unstable foundations." We discover no reason to depart from the conclusion expressed in the above quotation. The effect of the constitutional provision in question is to leave to the General Assembly itself the determination of the inquiry as to whether or not the required notice has been given. If the courts can review this determination and reverse the decision of the General Assembly on the ground of the insufficiency of the evidence exhibited before it, or may try the issue of fact anew, and on varying proofs, as often as the statute may have a bearing upon pending litigation, then it would seem to follow that such powers of supervision could as well be invoked as to any step in the process of legislation which is not by the Constitution required to be noted on the journals of the two houses, so that a like contest could be made in any case involving the application of a statute, and the recognition of its validity made to depend upon the ability of the party relying thereon to present evidence sufficient to overcome a showing that the bill was not in fact referred to a committtee of each house or that it was not in fact read at length on its final passage, or that there was some similar omission. If statutes could be so impeached by extrinsic evidence, then the facts that they are published to the world as valid laws and that the legislative journals afford no evidence of the omission of constitutional requirements in their enactment would be wholly insufficient to give assurance that they would be sustained by the courts. The necessity of recognizing the elements of certainty and stability in the laws, and the observance of the respect due to a coordinate department of the government, are sufficient to warrant the court in indulging the indisputable presumption that the General Assembly has made its enactments in the mode prescribed by the Constitution unless its journals show the contrary. Of course no such presumption is allowable as to a step in the process

of legislation which the Constitution requires to be noted on the journals of the two houses; for in such case the existence of the journal entry is made essential to the validity of the statute.—Cooley on Constitutional Limitations, (5th Ed.), 164, 168; *The State v. Buckley*, 54 Ala. 599. The following authorities in other jurisdictions are referred to as supporting the conclusion that the courts can not go behind the act and the journals of the two houses of the General Assembly to inquire whether the requisite notice was given.—*Spear v. The Mayor*, 85 Ga. 49; *Broadnax v. Groom*, 64 N. C. 244; *McClinch v. Sturgis*, 72 Me. 288; *The People v. Devlin*, 33 N. Y. 269; *The People v. Hurlburt*, 24 Mich. 55.

It is urged that the act above referred to presents no obstacle to the granting of a license to the petitioner to sell spirituous, vinous or malt liquors within the limits of the town of Falkville. The contention is that the prohibition operates only in the area extending three miles in all directions from the outer limits of the town, and not in the town itself. To impute this meaning to the words of the statute would result in defeating the obvious purpose of its enactment. The extension of the prohibition beyond the town limits was manifestly designed to preclude the possibility of the suppression of the liquor traffic in the town itself being made ineffectual by its establishment in the immediate neighborhood. It is plain that the word "within" as used in the statute means "in the limits or compass of; not beyond."—Webster's Internat'nal Dictionary. The intention would not have been more distinctly evidenced if the statute had expressly provided that the prohibition should be operative in the limits or compass of three miles of Falkville, or that it should not be of force beyond three miles of Falkville. Manifestly the town itself is included within the defined limits, and only beyond those limits could the traffic in question be licensed. In *Cook v. Johnson*, 47 Conn. 175, the court construed a contract which stipulated that the defendant should not practice dentistry "within a radius of ten miles of Litchfield." It was held that this expression meant "within ten miles of the center of the village of Litchfield." This construction seems natural and reasonable. It is unnecessary, however, to determine in this case whether the Legislature intended the prohibition to cover an area extending three miles from the center of the town or three miles from its boundaries. Under either construction the town itself is within the designated territory.

There was no error in the action of the City Court in sustaining the demurrers to the petition and in denying the application for the writ of *mandamus*.

Affirmed.